UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MCDOWELL ENTERPRISES, INC., )
                                    )
          Plaintiff, )
                                    )
    v.                            )    CAUSE NO. 3:02-CV-0288 RM
                                    )
TRANSPORTATION INSURANCE CO., )
                                    )
         Defendant. )

## MEMORANDUM AND ORDER

Transportation Insurance Company seeks summary judgment on McDowell Enterprises' claim that Transportation breached its insurance contract with McDowell Enterprises. McDowell Enterprises did not respond. For the reasons stated below, the court grants Transportation's motion for summary judgment. Because McDowell Enterprises did not respond, the facts recited below are drawn from the statement of undisputed fact in Transportation's brief, though they are interpreted in the light most favorable to McDowell Enterprises.

McDowell Enterprises chemically treats metals to meet its customers' electroplating, polishing, buffing, and metal finishing needs. After treating the metals, McDowell Enterprises washes them down. The ultimate destination for the water used to wash the metal (called rinse water) is the city sewer, but McDowell Enterprises must clean the rinse water before it can send it into the city sewer. This cleaning process is complicated, but the gist is as follows: Rinse water flows from various points in the plant to holding vats in the pretreatment area. From



these vats, the water flows into tanks designed to remove different chemicals because each chemical is removed in a different fashion—chrome one way, cyanide another. After the water has gone through these processes, but before it is pumped into the sewer, it passes through a pH monitor to ensure that dirty water is not flowing into the sewers. If the water isn't clean enough, the pH monitor stops water from being discharged into the sewers. If the water is clean enough, it flows out to the sewer past a city meter installed to measure water flow for billing purposes.

Everything worked well until McDowell Enterprises changed its manufacturing process to one that used less than one-half as much rinse water. The amount of water flowing out of the pretreatment area and into the sewer is related to the amount of water flowing into the pretreatment area. The volume of water flowing into the sewer no longer was enough to trip the city meter (apparently the city meter was a tumble meter, and it was not tumbling because the flow was going underneath it). The city soon realized that something was wrong, and instructed McDowell Enterprises to put in a meter that would effectively narrow the pipe at the point where the meter was placed, so the reduced outflow could be measured.

McDowell Enterprises complied with this request, but the narrowing of this meter so constrained the outflow that it created problems in the pretreatment system. This capacity problem, as the parties call it, was exacerbated by the city's

direction that McDowell Enterprises install a water meter on a sewer line. Sludge built up and coated parts of the system and pumps burned out because they were under water when they were never designed to be so. McDowell Enterprises had to close its plant to rectify these problems, which started in June of 2000 and ran through August of 2000.

McDowell Enterprises turned to its insurance company, Transportation, to help with the expenses. The parties had entered an agreement covering the period from August 28, 1999 to August 28, 2000. The policy generally covers "direct physical loss or damaged to covered property . . .caused by or resulting or resulting from any covered Cause of Loss." Building and Personal Property Coverage Form at 1, attached as exhibit 2 to the Defendant's Designation of Evidentiary Materials. Subject to many exclusions and limitations, a covered cause of loss "means RISKS OF DIRECT PHYSICAL LOSS." Causes of Loss-Special Form at 1, attached at exhibit 2 to Defendant's Designation of Evidentiary Materials (emphasis in the original).

One policy exclusion obviates coverage for damages "caused by or resulting from" any "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body," id at 3, but "if [this excluded cause of loss] results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." Another exclusion provides that Transportation will not pay for damages caused by "[w]ater that backs up or overflows from a

3

sewer, drain, or sump." This clause must be boilerplate, however, because a "limitation" explains, "[w]e [Transportation] will pay for loss or damage to covered property caused by water that backs up from a sewer or drain." Tailored Commercial Program Manufacturers' Program Extension Endorsement at 5, attached as exhibit 2 to the Defendant's Designation of Evidentiary Materials

When Transportation refused to pay McDowell Enterprises' claims, McDowell Enterprises brought suit in the Elkhart Superior Court for breach of contract. According to McDowell Enterprises, Transportation had breached the contract because "McDowell's policy states clearly that it will cover loss due to water damage." Complaint at 3. Transportation removed the case to this court on the basis of diversity jurisdiction and has now filed for summary judgment.[1]

Summary judgment is proper when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, the court construes all facts in the light

---

[1] The removal petition is defective because it does not allege that the plaintiff's principal place of business is in Indiana, it simply says that the plaintiff is a citizen of Indiana. Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993 (7th Cir. 2001) (pointing out that corporations are citizens of the state in which they are incorporated and the state in which they have their principle place of business); Strawbridge v. Curtiss, 7 U.S. 267 (1806) (requiring complete diversity for the purposes of diversity jurisdiction). McDowell Enterprises President Carol McDowell makes clear in her deposition, however, that McDowell's principal place of business is in Indiana. Deposition of Carol McDowell, November 1, 2001, at 4, attached as exhibit 1 to Defendant's Designation of Evidentiary Materials. Because the court can look to facts outside of the pleadings to determine whether subject matter jurisdiction exists, Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1333 n. 6 (11th Cir. 2001), the court is confident that it possess subject matter jurisdiction over this case.

most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 25 (1986). No genuine issue of material fact exists when a rational trier of act could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the non-moving party. Ritchie v. Glidden Company, 242 F.3d 713, 720 (7th Cir. 2001). "[N]either the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to material facts is sufficient to defeat such a [summary judgment] motion." Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732, 738 (7th Cir. 1999) (internal citations and quotations omitted).

Summary judgment is appropriate because the damages flow from a governmental decision. Based on the facts presented about the cause of the problems, all of which come from the deposition of McDowell Enterprises President Carol McDowell, the cause was the narrowing of the pipe affected by the installation of new water meter. Deposition of Carol McDowell, November 1, 2001, at 27, 33, 35, 41, attached as exhibit 1 to Defendant's Designation of Evidentiary Materials. The city decided that a new narrower meter was necessary and ordered McDowell Enterprises to buy and install it. As Ms. McDowell explained in her deposition, the "City not only decided [that a new meter was necessary], they told us where to buy it and which one to buy." Id. Ms. McDowell pithily summed up her company's relationship to the city vis-a-vis the meter decision: "[w]e didn't

5

have any say in this at all." Id. Finally on this point, it could not be found that this excluded cause of loss led to a covered cause of loss, the damage from which would be covered by the contract.

McDowell Enterprises' assertion in its complaint that the water damage proviso of the contract extends coverage to this situation is unconvincing. This clause extends coverage for water damage caused when water "backs up or overflows from a sewer, drain, or sump." Tailored Commercial Program Manufacturers' Program Extension Endorsement at 5. It seems plausible to say that the damage in this case emanated from water that had backed up from the sewer, but the only Indiana case interpreting this provision in a contract precludes this finding.[2] In Thompson v. Genis Building Corp., 394 N.E.2d 242, 244-245 (Ind. App. Ct. 1979), the court interpreted the term "back up" to refer to water that has actually gone down the sewer only to reverse course and come back whence it came. There was no boomeranging water here; water simply did not flow out at a great enough rate to allow the pretreatment equipment to work properly. The water damage proviso thus provides no basis for coverage.

_____

[2] A federal court sitting in diversity applies the choice of law rules used by the state courts in the state where it sits. Klaxon v. Stentor Electric Manufacturing Company, 313 U.S. 487 (1941). Indiana courts favor choice of law stipulations in contracts. Allen v. Great American Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002). No such clause appears in this contract, so the court applies the most intimate contacts test. Employers Ins. of Wausau v. Recticel Foam Corp., 716 N.E.2d 1015, 1024 (Ind. App. Ct. 1999). Relevant factors for this test include: a) the place of contracting; b) the place of the contract negotiations; c) the place of performance; d) the location of the subject matter of the contract; e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Id. No information exists on the first two factors. The third factor is often indeterminate, id, and the fifth factor points to both Illinois and Indiana. The fourth factor, therefore is dispositive. In this case, the location of the subject matter of contract (i.e., the location of the insured risk) is Indiana. Thus, Indiana law applies.

6

For the reasons stated above, the court GRANTS Transportation's motion for summary judgment [Doc. No. 18]. The court also VACATES the final pre-trial conference and trial settings [Doc. No. 14] and DENIES as moot Transportation's motion for an extension of the trial deadlines [Doc. No. 20].

SO ORDERED.

ENTERED: _May 3, 2003_

s/Robert L. Miller, Jr.

Robert L. Miller, Jr., Chief Judge
United States District Court

cc:   M. Brown
      C. Davidson